UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:10CV-00072-JHM**

**KELLY FRANKLIN, Individually and on
behalf of P.P., a minor; JOHN FRANKLIN;
and P.P., a minor**                                                                **PLAINTIFFS**

**VS.**

**ENTERPRISE RENT-A-CAR CO. OF CINCINNATI
AND KENTUCKY; EAN TRUST; and EAN
HOLDINGS, LLC**                                                                                **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendants, Enterprise Rent-A-Car Company, EAN Trust, and EAN Holdings, LLC, for summary judgment [DN 52]; on a motion by Plaintiffs, Kelly Franklin, John Franklin, and Patrick Peebles to exclude non-party experts by General Motors [DN 54]; and on a motion by Defendants to exclude the testimony of Plaintiffs' expert Gary W. Duncan [DN 58]. Fully briefed, these matters are ripe for decision.

**I. STANDARD OF REVIEW**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving

party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## II. BACKGROUND

In April of 2009, Plaintiff Kelly Franklin rented a 2009 Chevrolet Impala equipped with dual frontal airbags from Enterprise Rent-A-Car. At the time of the accident, the mileage of the vehicle was 13,567. On April 30, 2009, Plaintiff alleges that she was driving the 2009 Chevrolet Impala with her son, Plaintiff Patrick Peebles located in the right-front passenger seat, and two rear seat passengers. Plaintiffs aver that all the occupants in the vehicle were using their safety belts.[1] Plaintiffs allege that she lost control of the Impala during a rainstorm while trying to avoid striking an oncoming vehicle and exited the roadway. The Impala traveled off-road for 33 feet, striking an earth embankment, a fence post, and a guide wire for a utility pole before coming to rest. The front airbags did not deploy.

As a result of the injuries sustained, on April 30, 2010, Plaintiffs filed a design defect case against Defendants. Plaintiffs allege that the Enterprise Rent-A-Car is strictly liable for the damages

---

[1] The Crash Data Retrieval system for the vehicle indicated that the passenger seat belt was not buckled. (CDR Report at 1.)

2

to the Plaintiffs in renting the 2009 Chevrolet automobile to the Kelly Franklin in a defective and unsafe condition. (Complaint at ¶ 6.) Plaintiffs claim that the front airbags should have deployed in the collision and that both front safety belts failed to function properly. Specifically, Plaintiffs assert that the "2009 Chevrolet automobile on April 30, 2009 was unsafe and defective in that the Plaintiff, Kelly Franklin's seatbelt did not work and the airbag did not work and she was severely injured when her chest hit the steering wheel that has caused an aortic injury and other permanent injuries to her." (Id. at ¶11.) Plaintiff further claims that Patrick Peebles was permanently injured because of the unsafe and defective condition of the 2009 Impala "when his seatbelt did not work properly and the airbag did not work." (Id. at ¶10.) Plaintiffs assert that "Enterprise Rent a Car is the lessor and owner of the car and is liable for the injuries and damages." (Id. at ¶11.) Franklin claims that she sustained a traumatic brain injury, an aortic root enlargement, and an L3 fracture in the collision. Peebles claims that he sustained a ligament tear in his right knee in the crash and has ongoing headaches as a result of striking the windshield. John Franklin filed a claim for loss of consortium. Defendants now move for summary judgment on Plaintiffs' design defect claim.

### III. DISCUSSION

Plaintiffs allege a crashworthiness or enhanced injury design defect claim. Plaintiffs claim that a defect in the 2009 Chevrolet Impala caused injuries over and above those which would have been expected in the collision absent the defect. In a crashworthiness case, "[t]he claim, in essence, is that the design of the vehicle failed to reasonably protect the occupant in a collision." Toyota Motor Corp. v. Gregory, 136 S.W.3d 35, 41 (Ky. 2004). Under Kentucky law, the elements of a *prima facie* crashworthiness claim are: "(1) an alternative safer design, practical under the circumstances; (2) proof of what injuries, if any, would have resulted had the alternative, safer

3

design been used; and (3) some method of establishing the extent of enhanced injuries attributable to the defective design." Id. (citing Caiazzo v. Volkswagenwerk A.G., 647 F.2d 241, 250 (2nd Cir.1981); Huddell v. Levin, 537 F.2d 726, 737–38 (3rd Cir.1976)). Here, Defendants have shown that there is no genuine dispute as to any material fact and that Plaintiffs cannot satisfy their burden with respect to a *prima facie* case of crashworthiness related to the design of the Impala.

### A. Alternative Feasible Design

Plaintiffs have offered no proof of an alternative feasible design for either the frontal airbag sensing system or the driver's frontal safety belt system. In order to prove a product is "unreasonably dangerous" as designed, a plaintiff is required to produce competent evidence "of a feasible alternative design" that would have prevented the injury. Cummins v. BIC USA, Inc., 835 F. Supp.2d 322, 326 (W.D. Ky. 2011)(citing Toyota Motor Corp., 136 S.W.3d at 42). See also Hopkins v. Ford Motor Co., 2011 WL 5525454, *3 (W.D. Ky. Nov. 14, 2011)(noting that federal district courts in Kentucky have extended the reasonable alternative requirement to all design defect products liability claims).[2] Plaintiffs' expert, Gary Duncan, testified during his September 25, 2012,

---

[2] See Hopkins v. Ford Motor Co., 2011 WL 5525454, *3 (W.D. Ky. Nov. 14, 2011)(citing Low v. Lowe's Home Centers, Inc., 771 F. Supp. 2d 739, 741 (E.D. Ky. Feb.14, 2011) ("To prove a design defect, he must show that the defendants could have used a safer, and still feasible, design."); Snyder v. American Honda Motor Co., 2009 WL 2342733, *5 (E.D. Ky. July 28, 2009) (in extending the requirement of a reasonable alternative to a defective tie rod in an all-terrain vehicle, the court stated that Plaintiffs' expert failed "to establish a crucial element of Plaintiffs' products liability case: a defectively designed or manufactured product. To prove that a product was defectively designed, Plaintiffs must provide proof of a reasonable alternative design."); Busch v. Ansell Perry, Inc., 2005 U.S. Dist. LEXIS 12175, *9 (W.D. Ky. June 15, 2005) (the discussion in Toyota "suggests that evidence of a feasible alternative and safer design is required to prove most product design defect claims," including a design defect claim involving latex gloves.); Cameron v. DaimlerChrysler Corp., 2005 WL 2674990, *9 (E.D. Ky. Oct. 20, 2005) (in this case involving a parking brake assembly in a Jeep Wrangler "[p]roving there was an alternative design that was feasible and cost effective [was] part of the plaintiff's proof for a defective design claim....").

4

deposition, that he had not developed any alternative design for the front safety belts or for the airbag sensing system in the 2009 Impala. (Gary Duncan Dep. at 26-27.) "[T]he onus is on Plaintiffs to provide expert testimony setting forth 'competent evidence of some practicable, feasible, safer, alternative design.'" Estate of Bigham v. DaimlerChrysler Corp., 462 F. Supp. 2d 766, 773 (E.D. Ky. 2006).

Duncan opined that the frontal airbag system was defective because the airbags did not deploy in response to a vertical impact. In his deposition, Duncan conceded that the frontal airbags in the 2009 Chevrolet Impala are designed to deploy in response to a longitudinal change in velocity and that the 9.9 mph longitudinal change of velocity that he calculated is less than the 12 to 16 mile-per-hour deployment thresholds for the 2009 Chevrolet Impala. Duncan testified that as far as he knows, the 2009 Chevrolet Impala complied with the applicable Federal Motor Vehicle Safety Standards. (Duncan Dep. at 99-100, 113). Further, Duncan testified that he was not aware of another automobile or truck that had such an airbag sensing system. (Id. at 104-105). Further, as noted above, he did not provide competent evidence of some practicable, feasible, safer, alternative design. Estate of Bigham, 462 F. Supp. at 773.

For these reasons, the Court finds that Plaintiffs have failed to meet their burden of proving the existence of a feasible alternative design of either the airbag sensing system or the front safety belts.

**B. Proof of Defect in the Front Safety Belt**

While Plaintiffs claim that the driver's seat belt was "loose, relaxed, wore out and not properly maintained," they have no forensic evidence on which their expert relies to support these

assertions. (Plaintiffs' Response at 4.)³ Duncan testified that he had no "forensic evidence on the belt to indicate that there was slack in the webbing on the night of the crash," he had no "evidence that the driver's seat belt retractor didn't lock up as it was designed to do on the night of the crash," and he admitted that Kelly Franklin did not testify during her deposition about any slack in the seatbelt webbing on the night of the crash. (Duncan Dep. 116-117.) In fact, Defense Expert Michael Wendzinski opined that the retractor locking mechanism in the driver's safety belt is still functional and locked when the vehicle sense mechanism was evaluated. (Michael Wendzinski Report at 12-13.) Wendzinski further opined that "striations found on the latch plate are consistent with load marks generated by contact with the safety belt webbing" indicating that the seatbelt functioned properly during the accident. (Id. at 12.) In the present case, Plaintiffs have not identified a specific defect in the driver's safety belt.

### C. Proof of Enhanced Injuries

To survive summary judgment, Plaintiffs must also demonstrate what injuries would have been sustained had an alternative design been used and some method of establishing the extent of enhanced injuries attributable to the defective design. Toyota, 136 S.W.2d at 41. Plaintiffs have not set forth evidence that would support their claim that they suffered enhanced injuries due to a defective design of the seat belt or airbag system. See Martin v. Toyota Motor Sales U.S.A., Inc., 2011 WL 1899241, *2 (E.D. Ky. 2011)(citing Toyota, 136 S.W.3d at 41).

Plaintiff's engineering expert, Gary Duncan, testified that it was highly likely that Kelly Franklin's injuries would be "less, much less" had the frontal airbags deployed. Similarly, Duncan

---

[3]At his deposition, Duncan agreed with the Defendants that the right-front passenger was unbelted; therefore, there is no evidence of a defect in the right-front safety belt.

testified that deployment of the frontal airbag would have prevented Peebles from striking the windshield. (Duncan Dep. at 108, 119.) However, Duncan admitted that he did not know whether their injuries would have been prevented had the airbag deployed. Instead, Duncan testified that whether Kelly Franklin's lumbar fracture, aortic enlargement, and head injury would have been prevented had the frontal airbags deployed or a different safety belt had been used was a "question you'd probably have to ask the doctor." (Duncan Dep. at 119). The Plaintiffs' medical experts were asked these question, but neither Dr. Reader nor Dr. Naimoli could offer opinions about the mechanism of Plaintiffs' injuries or whether these same injuries would have been prevented with a different airbag sensing system or different safety restraint. (G. Scott Reader Dep. at 89-90). In fact, both medical experts testified that they had no expertise in the field of automotive engineering and would defer to automotive engineers on those type of questions. (Id.; Wayne Naimoli Dep. at 47.) Therefore, Plaintiffs cannot establish "the extent of the injuries attributable to the allegedly defective design – i.e. causation." Estate of Bigham, 462 F. Supp. 2d at 777.

### D. Right Front Passenger's Seat

In response to the motion for summary judgment, Plaintiffs allege that the right, front passenger seat in the 2009 Chevrolet Impala "moved forward" during the crash, enhancing Peebles injuries. The Plaintiffs did not plead this theory of design defect in their Complaint. Additionally, Gary Duncan did not mention this theory in his July 16, 2012, Expert Report. Pursuant to the September 4, 2012, Opinion and Order of Magistrate Judge Brennenstuhl, Plaintiffs are precluded from pursuing any theories of defect that were not disclosed in his original report. Furthermore, in his deposition, Duncan conceded that he could not prove the passenger seat in the vehicle was defective. (Duncan Dep. at 130.)

**E. Crashworthiness Claim**

Finally, the Court rejects Plaintiffs' argument that their claims are not subject to the law set forth in Toyota Motor Corp. v. Gregory, 136 S.W.3d 35, 41 (Ky. 2004) for crashworthiness or enhanced injury design defect claims. Plaintiffs cite no case law or authority for this argument. In their Complaint, Plaintiffs assert that "Enterprise Rent a Car is strictly liable for the damages to the Plaintiffs in renting the 2009 Chevrolet automobile to the Plaintiff, Kelly Franklin in a defective and unsafe condition." (Complaint at ¶ 6 (emphasis added).) Throughout this litigation, Plaintiffs claim that a design defect in the frontal airbags and the frontal safety belt of the 2009 Chevrolet Impala caused injuries over and above those which would have been expected in the collision absent the defect. In fact, in Plaintiffs' response to Defendants' motion to exclude the testimony of a late disclosed expert (Gary Duncan), Plaintiffs specifically argued that "[t]he importance of Gary Duncan's Expert Engineering Report is that it places clear liability on General Motors for the Traumatic Brain injury, and the Aortic/Heart injury and other injuries to Kelly Franklin because the seatbelt did not work properly[,] the airbags did not deploy[,] and the Delta V was really 33.9 instead of 10 as found by the Defendants Engineers . . . ." (DN 35 at ¶ 14.) If an automobile design defect claim may be asserted against a rental car agency[4], then the case law requiring proof of an alternative feasible design should apply to that cause of action. See Toyota, 136 S.W.3d at 42.

For these reasons, the Court finds that Plaintiff have not set forth sufficient evidence of a *prima facie* case of crashworthiness related to the design of the Impala. Finding no genuine disputes

---

[4]See Kemp v. Miller, 453 N.W.2d 872, 880 (Wis. 1990). But see Burke Enterprises, Inc. v. Mitchell, 700 S.W.2d 789 (Ky. 1985)(only claim brought against rental agency was negligence claim, no strict liability claim was alleged).

of material fact, the Court grants Defendants motion for summary judgment.

## IV. MOTION TO EXCLUDE EXPERT TESTIMONY OF GARY DUNCAN

Furthermore, the Plaintiffs' claims likewise fail because Plaintiffs' engineering expert Gary Duncan is not qualified to render an expert opinion regarding a design defect in the 2009 Chevrolet Impala pursuant to Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and Fed. R. Evid. 702. The Court considered the testimony of Plaintiffs' expert, Gary Duncan, in deciding the motion for summary judgment. Notwithstanding, after a review of the expert report, curriculum vitae, and arguments of the parties, the Court would exclude his testimony under Daubert and Rule 702.

An examination of his curriculum vitae and deposition transcript reveal that he has no training or education in the field of automotive design, nor was he employed in that field. Further, Duncan testified in his deposition that he had no training or experience in automobile design, seat belt design, air bag design, or crash testing. He further testified that he had never been employed in the field of automobile mechanics, vehicle manufacture, or automotive engineering. (Duncan Dep. at 22-24.) In response to Defendants' motion to exclude Gary Duncan, Plaintiffs do not provide any support to suggest that Duncan is qualified to offer opinions related to airbag design and performance or safety restraint design and performance. Instead, Plaintiffs respond that the Court already ruled on Defendants' motion to strike Duncan and that ruling should be preclusive. Contrary to Plaintiffs' argument, the Magistrate ruled on whether Duncan should be excluded as an expert in this case because he was not timely disclosed as an expert pursuant to Fed. R. Civ. P. 26. [DN 48].

For these reasons, Defendants' motion to preclude Plaintiffs' expert, Gary Duncan, from offering opinions regarding airbag design and safety belt design is granted.

## V. MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERTS

Plaintiffs seek to exclude the testimony of all of Defendants' experts arguing that the defense experts are not retained or paid by the Defendants, and as a result, the use of these experts is a conflict, a fraud and prejudicial. (Plaintiffs' Motion to Exclude at 2.) Plaintiffs contend that the attorneys representing Defendants are employed and are paid by non-party General Motors.

Defendants initially filed a third-party complaint against General Motors and then voluntarily dismissed the company. Defendants represent that the law firm of Eckert Seamans Cherin & Mellott, LLC, properly retained experts on behalf of Defendants and provided all necessary disclosures pursuant to Fed. R. Civ. P. 26. Plaintiffs have been provided with applicable time to prepare a rebuttal to any of the expert's opinions. Plaintiffs have offered no evidence of how they have been prejudiced, defrauded, or harmed. For these reasons, the Court denies Plaintiffs' motion to exclude all of Defendants' engineering experts and medical experts.

## VI. CONCLUSION

**IT IS HEREBY ORDERED THAT** the motion by Defendants, Enterprise Rent-A-Car Company, EAN Trust, and EAN Holdings, LLC, for summary judgment [DN 52] is **GRANTED**. **IT IS FURTHER ORDERED** that the motion by Plaintiffs, Kelly Franklin, John Franklin, and Patrick Peebles to exclude non-party experts by General Motors [DN 54] is **DENIED** and the motion by Defendants to exclude the testimony of Plaintiffs' expert Gary W. Duncan [DN 58] is **GRANTED**.

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: counsel of record

March 4, 2013